William WISE, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Dale F. GABLE, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

John BENNINGTON, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

James BOTTERBUSCH, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Donald J. KNAB, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Earnest HAINES, Jr., Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Robert SHAULL, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Warren KROUT, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Barry L. LLOYD, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Earl BOSSERMAN, Jr., Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

John REE, III, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 1997.

Decided Feb. 20, 1998.

Jeffrey A. Gettle, York, for petitioners.

Linda S. Lloyd, Harrisburg, for respondent.

Before SMITH and KELLEY, JJ., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Before us are eleven petitions for review filed by former employees (Petitioners) of GTE North, Inc. (GTE) from individual decisions of the Unemployment Compensation Board of Review (Board) that reduced or eliminated Petitioners' unemployment compensation benefits because of their receipt of pension benefits.

Petitioners were employed by GTE in various positions for individual periods ranging from twenty-six to thirty-eight years. GTE announced that layoffs were imminent and offered an early retirement package for those with fifteen or more years of service and a combination in age and years of service of seventy-six or more years. Petitioners all qualified and accepted early retirement. The plan allowed for the distribution of pension benefits by either lump sum or monthly annuity. All of the Petitioners were under the age of fifty-nine and one-half at the age of retirement. The Internal Revenue Code (I.R.C.) § 72(t) imposes a 10% penalty on pensions distributed before the pensioner attains the age of fifty-nine and one-half. For that reason, the Petitioners each chose to accept their pensions in a lump sum to be rolled over into another retirement plan to avoid the federal tax penalty.

Petitioners applied for unemployment compensation benefits following their retirement.

Although determined to be eligible for benefits,[1] Petitioners suffered a reduction, in some cases to the point of elimination, of their benefits by the pro-rata weekly amount of pension benefits that Petitioners were eligible to receive had the Petitioners taken a monthly rather than a lump sum pension distribution. These reductions were made pursuant to Section 404(d)(2) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, as amended, 43 P.S. § 804(d)(2). That section provides in pertinent part:

(i) [F]or any week with respect to which an individual is receiving a pension ... under a plan maintained or contributed to by ... [an] employer, the weekly benefit amount payable to such individual for such week shall be reduced, but not below zero, by the pro-rated weekly amount of the pension as determined under subclause (ii).

(ii) If the pension is entirely contributed to by the employer, then one hundred per centum (100%) of the pro-rated weekly amount of the pension shall be deducted. If the pension is contributed to by the individual, in any amount, then fifty per centum (50%) of the pro-rated weekly amount of the pension shall be deducted.

43 P.S. § 804(d)(2). In these cases, GTE made the entire contribution to the pensions. On administrative appeal, the Board affirmed the referee's reduction of Petitioners' benefits under Section 404(d)(2). These petitions for review followed.

This Court's scope of review in unemployment compensation cases is limited to a determination of whether constitutional rights were violated, errors of law were committed, or findings of fact were not supported by substantial evidence. *Sargent v. Unemployment Compensation Board of Review*, 157 Pa.Cmwlth. 534, 630 A.2d 534 (1993). Petitioners argue that the Board erred by reducing their benefits pursuant to Section 404(d)(2) because they were not eligible to receive a monthly pension (upon which the pro-rated weekly deductions were based) without incurring a federal tax penalty of 10%. In support, Petitioners cite *Rathvon v.*

---

**1.** The issue of Petitioners' separation from service is not present in these cases.

*Unemployment Compensation Board of Review,* 663 A.2d 893 (Pa.Cmwlth.1995).

In *Rathvon,* this Court affirmed the Board's interpretation of Section 404(d)(2) authorizing the reduction of benefits by the pro-rata weekly amount of pension monies the claimant may have received. The claimant in *Rathvon* was involuntarily separated from his employment but was eligible to receive a pension in accordance with his employer's policies. The claimant was sixty years of age at the time of separation/retirement. He elected to receive his pension in a lump sum and placed the money into other investments. The claimant argued that his unemployment benefits should not be reduced pursuant to ·Section 404(d)(2) because he was not actually receiving pension monies, as they were taken in a lump sum and invested elsewhere, and that he did not intend to retire or considered himself retired. We held, however, that the determinative question concerning the reduction provisions of Section 404(d)(2) was whether an employee was eligible to retire. Since the claimant was eligible to retire in accordance with his employer's plan, we affirmed the Board's application of the Section 404(d)(2) reductions. In coming to this conclusion, however, we stated: "Although Claimant never intended to retire nor considered himself to be retired, at the time of his separation Claimant was admittedly eligible to receive his pension monies without penalty." *Id.* at 895–96. In a footnote marked at the end of this sentence, we stated: "Claimant was not subject to a penalty under federal tax law, as the lump sum distribution was made after Claimant reached age fifty-nine and a half. I.R.C. § 72(t)." *Id.* at 896 n. 5. Based upon this language, Petitioners contend that this Court has already determined that unemployment benefits are not subject to Section 404(d)(2) reductions when a pension is subject to the federal tax penalty.

The Board argues that our language in *Rathvon* is simply dicta with no bearing on the holding of that case. The Board cites several cases subsequent to *Rathvon* where this Court affirmed the reduction of benefits because of receipt or eligibility to receive

pension monies, without concern for the federal tax ramifications, even though the employees were under the age of fifty-nine and one-half.[2] *See Attenberger v. Unemployment Compensation Board of Review,* 682 A.2d 68 (Pa.Cmwlth.1996); *PECO Energy Co. v. Unemployment Compensation Board of Review,* 682 A.2d 36 (Pa.Cmwlth.1996); *Salerno v. Unemployment Compensation Board of Review,* 674 A.2d 776 (Pa.Cmwlth.1996). The Board further argues that neither law nor regulation provides for the exception to the Section 404(d)(2) reductions that Petitioners wish to assert. Finally, the Board emphasizes that we have recognized that the intent of the General Assembly in enacting the provisions permitting a reduction in benefits pursuant to Section 404(d)(2) was to preserve unemployment funds for those who truly need them. *See, e.g., Attenberger.* The Board contends that the Petitioners, as recipients of retirement pensions, are not those who truly need unemployment benefits to the extent of the pro-rata weekly pension benefit to which they are eligible.

We cannot agree with the Board, however, that our language in *Rathvon* is mere surplusage. In both *Rathvon* and *Salerno,* we affirmed the reduction of unemployment benefits based upon the fact that the employee was eligible to retire *and* eligible to receive a pension *without penalty.* In this case, it is clear that Petitioners were not eligible to receive their pensions without penalty. Because they were separated from service prior to age fifty-nine and one-half, their pension monies were subject to a tax penalty of 10% if actually received by them. To avoid this situation, Petitioners transferred their pensions into investments that were beyond their reach barring the penalty. In essence, then, these monies were situated no differently than they had been previously with GTE, that is, beyond the effective reach of Petitioners.

In this case, the Board reduced Petitioners' unemployment benefits, in some cases to zero, based upon monies to which Petitioners could not have access without penalty. We cannot find that it was the intent of the legislature in enacting Section 404(d)(2) to

---

**2.** The issue in the present cases was not ad-

dressed in the cases cited by the Board, however.

reduce unemployment benefits by pension monies not capable of being received in hand without penalty. Clearly, the purpose of this section was to reduce an employee's benefits by the amount of pension monies the employee was eligible to receive because the employee would have access to the equivalent of the reduction. The opposite position would force employees in Petitioners' situation to treat their pensions in a manner that would incur the federal tax penalty in order to receive the full unemployment benefit amount following their involuntary separation from employment. The employees would then, in essence, suffer a double loss of retirement monies: the loss of 10% of the total pension monies received and then a reduction in benefits based upon the remainder. This would then be the only alternative, under the Board's interpretation of Section 404(d)(2), to employees who required the full benefit to survive the period immediately following their involuntary separation from employment. Thus, we cannot agree with the Board that the legislature's intention to preserve funds for those truly in need contemplates that employees should incur a penalty on their pension monies in order to obtain the benefit payable to them under the Law. We cannot forget that the Law was designed to alleviate the difficulties of unemployment and the distress suffered by the individual unemployed worker and thus must be liberally interpreted to provide for the maximum amount of benefits allowable by the Law. *Penflex, Inc. v. Bryson,* 506 Pa. 274, 485 A.2d 359 (1984).

We are supported in rejecting the Board's position by the holdings in other jurisdictions. The Oregon Supreme Court, construing a statute similar to Section 404(d)(2), held that a claimant who receives a lump sum pension and then rolls it over into another qualifying retirement plan, has not "received" a pension for purposes of the statute, and is thus not disqualified from receiving unemployment benefits. In coming to this decision, the Court noted that the Oregon statute was designed to avoid "double dipping" from persons who receive, in hand, both unemployment and pension benefits. The Court further noted that important policy considerations prohibit the "unreasonable result" of reducing unemployment benefits placed beyond the reach, without penalty, of the employee:

> Moreover, it is unlikely [that the intent of Oregon's and other unemployment laws was to undermine] the federal tax policy relating to retirement savings that is embodied in the federal laws relating to the taxation of retirement plans such as IRAs. We believe that the deferral of federal income taxes on current income and the imposition of a substantial penalty for premature withdrawal of IRA contributions indicates a strong federal policy to encourage the accumulation of retirement funds for use after retirement. [The Oregon statute] was not intended to force an unemployed worker who remains in the workforce to use retirement funds involuntarily for current living expenses. That result also is consistent with the fact that an unemployed worker's savings and other financial resources are not offset against unemployment benefits. The general purpose underlying [the Oregon statute] is to prevent an unemployed worker from collecting retirement benefits and unemployment benefits simultaneously. It is not to force the premature depletion of retirement funds for current living expenses when a person is not of retirement age and, in fact, is saving for future retirement under a plan that both state and federal taxing authorities recognize as a tax-advantaged retirement plan.

*McKean-Coffman v. Employment Division,* 312 Or. 543, 551, 824 P.2d 410, 414–15 (1992).

Similarly, the Supreme Court of Washington held that a separated employee's transfer of retirement benefits from the employer's plan to another plan where the monies are not available to the employee without substantial penalty prohibits a finding that the employee received payment of pension monies for purposes of reducing the employee's unemployment benefits. In coming to this holding, the Court also noted the policy concerns of federal tax law regarding retirement plans. *Johnson v. Employment Security Department of the State of Washington,* 112 Wash.2d 172, 769 P.2d 305 (1989).

Therefore, we do not find that our language in *Rathvon* concerning the federal tax penalty was without meaning. The fact that subsequent cases cited by the Board did not address the issue of the federal tax penalty reflects only that the issue was not raised in those cases. We have been clear, however, that the Section 404(d)(2) reductions are to be implemented only when the employee is eligible to retire and receive a pension *without penalty. Salerno; Rathvon.* The Board's order does not adhere to this position. Accordingly, the order of the Board is reversed, and this matter is remanded to the Board with instructions that the unemployment benefits of Petitioners be reinstated without reduction for pension monies reinvested into retirement investments that prohibit access unless the federal tax penalty set forth at I.R.C. § 72(t) is incurred.

## *ORDER*

AND NOW, this 20th day of February, 1998, the orders of the Unemployment Compensation Board of Review (Board) in the above-captioned matters are hereby reversed, and these matters are remanded to the Board with instructions that the unemployment benefits of the above petitioners be reinstated without reduction for pension monies received that have been reinvested into retirement investments that prohibit access unless the federal tax penalty set forth at I.R.C. § 72(t) is incurred.

Jurisdiction relinquished.