**Leo G. KELLY, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

**PECO ENERGY COMPANY, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 22, 1996.

Decided Aug. 16, 1996.

Catherine R. Barone, for Petitioner, Leo Kelly.

Debra L. Casey, for Intervenor, PECO Energy.

Maribeth Wilt–Seibert, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, for Respondent.

Before McGINLEY and SMITH, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

The factual and procedural history of this consolidated appeal is as follows. Leo G. Kelly (Kelly) worked for PECO Energy Company (PECO) from August 3, 1959 until December 31, 1994 as a line foreman; in 1989 he was assigned to a position as a methods and training liaison but continued to be paid as a line foreman. A Voluntary Retirement Incentive Program (VRIP) was offered to all employees by PECO which was in the process of reorganization.[1] On August 4, 1994,

---

1. PECO offered all employees the choice of maintaining their present employment, accepting a voluntary separation incentive plan or accepting a voluntary retirement incentive plan if they

Kelly accepted the VRIP effective December 31, 1994. Thereafter, Kelly began receiving a pension which was funded 100% by PECO.

Kelly applied for unemployment compensation (UC) benefits on January 8, 1995 with the Lansdale Office of Employment Security (OES). On January 30, 1995, the OES issued a determination that Kelly was entitled to UC benefits under Section 402(b) of the Unemployment Compensation Law (Law).[2]

The OES also addressed the deductibility of Kelly's pension from PECO from his UC benefits. The OES found as a fact that Kelly was involuntarily separated from PECO on December 31, 1994 and thereafter was receiving a monthly pension in the amount of $2,140.66. The OES further found that Kelly's separation was prior to his retirement age and that he was permanently separated from his employment. Following a discussion of Section 404(d)(2) of the Law and 34 Pa.Code Section 65.103, the OES concluded that "[s]ince the claimant was involuntarily and permanently separated from his employment prior to his retirement date and received a monthly pension, the pension does not constitute a retirement pension and cannot be deducted from his weekly benefit rate." The OES on February 24, 1995 made a determination that "[t]he claimant is eligible for Unemployment Compensation with out [sic] deduction under the provisions of Section 404(d)(2) of the law and 34 PA Code Section 65.103."

On February 7, 1995, PECO appealed the January 30, 1995 OES determination that Kelly was entitled to UC benefits because he had cause of a necessitous and compelling nature for leaving his employment. PECO, on March 7, 1995, also appealed the February 24, 1995 determination of the OES that Kelly was eligible for UC benefits without deduction.

On March 29, 1995 a hearing was held before a referee limited solely to the question of whether Kelly was entitled to UC benefits.

On May 1, 1995, the referee, having found that Kelly's job as methods and training liaison was being discontinued and that he was physically unable to perform the duties of his former position as line foreman, concluded that Kelly met his burden in proving that he left his job for necessitous and compelling reasons. The referee entered the following order:

> The decision of the Office of Employment Security is AFFIRMED. Claim credit for waiting week ending 1/14/95 and benefits for compensable week ending 1/21/95 are ALLOWED under Section 402(b) of the Law.

On April 25, 1995, the referee conducted a second hearing on PECO's appeal from the February 24, 1995 determination of the OES, which hearing was limited to whether the pension Kelly was receiving from PECO should be deducted from his UC benefits.

On May 1, 1995,[3] the referee filed a decision in which he made the following findings of fact:

1. The claimant was last employed by PECO Energy Company until December 31, 1994 at which time he was permanently and involuntarily separated from his employment.

2. Upon his separation from PECO, the claimant was fifty-three years of age, his date of birth being July 25, 1941.

3. The normal retirement age for PECO employees is fifty-five with certain penalties.

4. PECO is the sole contributor to the employee's retirement pension fund.

5. The claimant's monthly pension is approximately $2,300.00 effective January of 1995.

The referee reasoned as follows:

Section 404(d)(2) of the Pennsylvania Unemployment Compensation Law provides that any pension or annuity received by the claimant is deductible from unemployment compensation as follows: 1) if the pension is based on services performed for

---

had five (5) years of service and reached age fifty on or before December 31, 1994. Kelly was 53 years old at the time of his separation from employment. PECO's original retirement plan was amended by the VRIP to allow retirement at age fifty with full medical benefits.

**2.** Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802.

**3.** The same date of the referee's decision that Kelly's termination of employment was of a necessitous and compelling nature.

a base period or chargeable employer, which affected the eligibility for, or increased the amount of, the pension; 2) if contributions were made to the pension solely by the employer, the prorated weekly pension amount will be deducted from the weekly benefit rate on a dollar for dollar basis; 3) if the claimant contributed in any amount, to the pension, fifty percent of the prorated weekly pension amount will be deducted from the weekly benefit rate. 34 PA Code Section 65.103 provides in part that when an employee ha [sic] accumulated certain monies under a retirement pension plan but is permanently and involuntarily separated from his employment prior to retirement date, and payment is made to him from such monies, that payment shall not constitute a retirement pension or annuity within the meaning of Section 404(d)(iii) of the Law nor shall it be considered a deductible wage or replacement under any other provision of the Law.

The competent evidence on record reveals that the claimant was permanently and involuntarily separated from his employment prior to his normal retirement age. Therefore, the claimant's pension should not be deducted from his unemployment compensation benefits.

Based on the foregoing, the referee entered an order as follows:

> The decision of the Office of Employment Security is AFFIRMED. The claimant is eligible for unemployment compensation benefits without deduction of his pension from PECO Energy Company under Section 404(d)(2) of the Law.

PECO, on May 15, 1995, filed *two separate appeals* to the Unemployment Compensation Board (Board). One appeal was from the May 1, 1995 order of the referee's affirmance of the decision of the OES granting UC benefits to Kelly; the second appeal was from the May 1, 1995 order of the referee's affirmance of the decision of the OES that Kelly is eligible for UC benefits without deduction of his pension from PECO under Section 404(d)(2) of the Law.

Following argument, the Board, on August 17, 1995, filed *two separate decisions.* One decision affirmed the decision of the referee, being the decision of the referee affirming the grant of benefits by the OES. This decision was rendered by the Board without an opinion. The second decision of the Board, which was accompanied by an opinion, held that Kelly's pension was deductible from his weekly benefit rate and "claimant is eligible for no benefits." The Board then entered an order as follows:

> The decision of the referee is reversed and benefits are denied.

The two separate orders of the Board resulted in the current consolidated appeals. PECO appealed the order of the Board which affirmed the decision of the referee affirming the decision of the OES granting UC benefits to Kelly. This appeal is docketed at 2378 C.D. 1995. Kelly appealed the order of the Board which "reversed" the decision of the referee and denied UC benefits to Kelly. This appeal is docketed at 2307 C.D. 1995.

We will first address the appeal of Kelly[4] who argues that the Board erred in finding that Kelly's pension from PECO was a total offset to the UC benefits Kelly would be entitled to receive, thus resulting in the denial of UC benefits to Kelly.

Once it is determined, as herein, that a claimant qualifies to secure compensation under Section 401 of the Law, 43 P.S. § 801, the rate and the amount of compensation to be awarded an eligible employee is to be determined pursuant to Section 404(a) through (c). However, Section 404(d)(1) through (3) provides for certain deductions, as set forth therein, in reduction of the benefits, but not below zero.

It is not disputed herein that the pension that Kelly was receiving from PECO was entirely contributed to by PECO. Section 404(d)(2) provides as follows:

> (i) [F]or any week with respect to which an individual is receiving a pension, including a governmental or other pension, retirement or retired pay, annuity or any other similar periodic payment, under a

---

4. Our review of these appeals is limited to determining whether constitutional rights have been violated, an error of law has been committed or whether necessary findings of fact are supported by substantial evidence. *Baertl v. Unemployment Compensation Board of Review,* 156 Pa.Cmwlth. 428, 627 A.2d 1232 (1993).

plan maintained or contributed to by a base period or chargeable employer, the weekly benefit amount payable to such individual for such week shall be reduced, but not below zero, by the pro-rated weekly amount of the pension as determined under subclause (ii).

(ii) If the pension is entirely contributed to by the employer, then one hundred per centum (100%) of the pro-rated weekly amount of the pension shall be deducted. . . .

Here the Board properly determined that Kelly receives a pension of $494.00 per week and that this pension was entirely contributed to by PECO. Because Kelly's weekly pension exceeds his calculated weekly benefit rate of $340.00, the UC benefits of Kelly are reduced to zero according to the statutory provision.[5]

Thus, the Board properly applied the pension offset statute and reversed the referee's conclusion that no deduction for the pension was to be applied. Although Kelly was eligible for UC benefits, he receives none because of the offset provision.[6] *See Rathvon v. Unemployment Compensation Board of Review,* 663 A.2d 893 (Pa.Cmwlth.1995).

By reason of our determination of the appeal of Kelly at 2307 C.D. 1995, we do not address the appeal of PECO at 2378 C.D. 1995 as it is rendered moot and will be dismissed.

*ORDER*

No. 2307 C.D. 1995

AND NOW, this 16th day of August, 1996, it is ORDERED that the August 17, 1995

decision and order of the Unemployment Compensation Board of Review, which reversed the decision of the referee that claimant was eligible for unemployment compensation benefits without deduction of his pension from PECO Energy Company and denied benefits to claimant, is affirmed.

*ORDER*

No. 2378 C.D. 1995

AND NOW, this 16th day of August, 1996, it is ORDERED that the appeal of PECO, by reason of our decision at 2307 C.D. 1995, is dismissed as being moot.

McGINLEY, Judge, concurring and dissenting.

I agree with the result reached by the majority. I write separately, however, because I disagree with the reasoning which the majority uses to reach that result. Initially, I believe the majority creates confusion by stating that "Pennsylvania law ... reduces benefits by amounts attributable to *any* pension", Majority opinion at 32, n. 5 (citations omitted), while acknowledging that there is an administrative exemption, Majority opinion at 32, n. 6.

I also disagree with the majority's reasoning at footnote 6 why 34 Pa.Code § 65.103 does not apply. While I agree that 34 Pa. Code § 65.103 does not apply, this does not mean Kelly was not involuntarily separated from his employment. The majority concludes that the administrative exemption at 34 Pa.Code § 65.103 is inapplicable "both because Kelly was not involuntarily separated from his employment and because minimum retirement age with Employer was 50 years and Kelly was 53 years old at the time of his voluntary separation." Majority opin-

5. "Pennsylvania law ... reduces benefits by amounts attributable to *any* pension." *Novak v. Unemployment Compensation Board of Review,* 73 Pa.Cmwlth. 148, 457 A.2d 610 (1983). *See also Tenaglia v. Unemployment Compensation Board of Review,* 73 Pa.Cmwlth. 453, 458 A.2d 331 (1983).

6. We are cognizant of the administrative exemption at 34 Pa.Code § 65.103 which provides: (a) When an employe has accumulated certain moneys, rights or equities under a retirement pension or annuity plan but is permanently and involuntarily separated from his employment prior to retirement date, and payment is

made to him from the moneys or in liquidation of his rights or equities, that payment may not constitute a retirement pension or annuity within the meaning of section 404(d)(4)(iii) of the law (43 P.S. § 804(d)(4)(iii)) nor may it be considered a deductible wage replacement under any other provision of the law. However, this exemption is inapplicable herein because Kelly's minimum retirement age with Employer was 50 years and Kelly was 53 years old at the time of his voluntary separation. *See Salerno v. Unemployment Compensation Board of Review,* 674 A.2d 776 (Pa.Cmwlth.1996).

ion at 32, n. 6. In the present controversy, Kelly voluntarily terminated his employment for a necessitous and compelling reason prior to his scheduled retirement date and received retirement benefits. I believe that a finding of a "necessitous and compelling reason" negates all voluntariness attached to the termination and is equivalent to an involuntary termination. Further, the record reflects that the normal retirement age for employees was 62, and the VRIP facilitated employees to retire at 50 without penalty.

I concur in the result reached by the majority because pursuant to the VRIP Kelly was entitled to retire with full benefits, in other words, as if he reached normal retirement age. In *Boyle v. Unemployment Compensation Board of Review*, 130 Pa.Cmwlth. 32, 566 A.2d 1259 (1989), this Court held that forced retirement in lieu of a layoff did not entitle a claimant to unemployment compensation benefits where the claimant was eligible to receive full pension benefits because of his age. This is the same situation that confronts Kelly.