Mary THOMPSON, Petitioner,

v.

**UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 25, 1996.
Decided Dec. 3, 1996.
Reconsideration Denied Jan. 28, 1997.

Mary Thompson, pro se, petitioner.

Randall S. Brandes, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, Harrisburg, for respondent.

Before FRIEDMAN and KELLEY, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Mary Thompson (Thompson), pro se, petitions for review of an order of the Unemployment Compensation Board of Review (Board) that affirmed the decision of the referee which disallowed unemployment compensation benefits pursuant to Section 402(b) of the Unemployment Compensation Law[1] (Law).

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. 2897 (1937), *as amended*, 43 P.S. § 802(b) pro- vides, in pertinent part, as follows:

Thompson began working for Temple University (Temple) as a certified dental assistant on January 14, 1980. Thompson did not report to work after March 6, 1995 at which time she filed a worker's compensation claim.[2] During the pendency of said claim, Thompson requested and was granted a leave of absence on March 17, 1995 for a period of twelve weeks (March 6, 1995 through May 26, 1995) pursuant to the Family and Medical Leave Act of 1993 (FMLA). The FMLA leave request form provided, in pertinent part, as follows:

> Return to Work: You must notify Personnel of your intention to either return to work or to request a Medical/Personal Leave of Absence at least two (2) weeks prior to the expiration of your approved FMLA. If you do not report to work on your first scheduled work day following the termination of your leave, you will be considered as having voluntarily resigned. Before permission to return to work is granted, you must present to Personnel written certification by your doctor.

Temple issued a notice of worker's compensation denial on March 28, 1995 from which Thompson filed an appeal. As of May 26, 1995, Thompson had not requested a medical/personal leave of absence nor had she returned to work.[3] On June 23, 1995, Nancy Etsell (Etsell)[4] sent a letter to Thompson reminding her that her leave of absence under the FMLA had expired and informed her that in order to maintain her employment relationship with Temple she was now required complete a Request for Leave of Absence (LOA) form by June 30, 1995 otherwise she will be considered to have voluntarily resigned her position. Thompson did not read the letter but she forwarded it to her attorney Kirk Williams (Williams) who was also representing her in the worker's com-

pensation matter. Thompson did not submit the LOA form by June 30, 1995. On July 6, 1995, Williams had a conversation with Etsell at which time he requested another LOA form which allegedly had been left out of the June 23, 1995 mailing. By letter of August 23, 1995, Williams acknowledged receipt of the requested LOA form; further noting the ongoing pendency of the worker's compensation matter, Williams wrote "I await your instructions for properly recording Ms. Thompson's current absence from work." On September 11, 1995, Etsell sent a letter by certified mail to Thompson directing her to contact Temple as soon as possible concerning her leave of absence. Thompson received the letter on October 6, 1995 but did not respond as instructed. On October 17, 1995, Etsell had a conversation with Williams during which she informed him of the necessity that Thompson complete and return the LOA form. On October 19, 1995, Etsell sent another letter to Thompson again reminding her that the leave of absence under the FMLA had expired and instructing her that she needed to complete and return the enclosed LOA form by October 27, 1995 in order to maintain her employment otherwise she will be considered to have voluntarily resigned her position. Neither Thompson or Williams submitted the LOA form by October 27, 1995, nor did they contact Temple with an explanation or a request for an extension. By letter of November 20, 1995, Etsell informed Thompson that she was considered to have voluntarily resigned effective October 27, 1995 since she had not submitted the LOA form or contacted Temple as requested. On November 28, 1995, Williams mailed the completed LOA form to Etsell who refused to accept the same because Thompson had already been considered to have voluntarily resigned.

An employee shall be ineligible for compensation for any week —
(b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, . . . .

2. Thompson claimed that strained relations with her supervisor caused her to experience depression, situational stress and anxiety which precluded her from continuing to work in her current position.

3. Thompson's physician released her to return to work, on a part time basis, as of June 5, 1995, with the restriction that she be "assigned to another department with a new boss." Thompson alleges that she was informed by Temple on June 6, 1995, that there were no positions available for her at that time.

4. Etsell worked for Temple as an Employee Relations Manager.

On December 17, 1995, Thompson applied for unemployment compensation benefits which were granted by the Interstate Claims Office.[5] Temple appealed to the referee who, after conducting a hearing on the matter, reversed and disallowed benefits under Section 402(b) of the Law having concluded that Thompson voluntarily left her work without cause of a compelling and necessitous nature because she failed to return to work after the expiration of her FMLA leave and did not comply with Temple's policy regarding leaves of absence. Thompson appealed to the Board which affirmed the decision of the referee.

On appeal to this Court[6], Thompson does not contend that Temple's policy is in any way unreasonable or that she substantially complied with the same; rather, Thompson argues that she did not voluntarily quit her work because, as of June 5, 1995, she was ready, willing, and able to work, albeit not in her previous position, and would have done so but for having been informed by Temple that it did not have a such a job available at that time. In short, Thompson argues that since she did not desire to continue her leave of absence, she cannot be said to have voluntarily left her work for failing to comply with Temple's policy regarding leaves of absence.

We must first determine whether or not Temple was correct in considering Thompson to have voluntarily resigned. There is no dispute that Thompson was aware of the consequences if she failed to comply with Temple's policy in a timely manner. Thompson was repeatedly warned by Etsell that it was imperative for her to provide the completed LOA form in order to maintain her employment relationship otherwise she will be considered to have voluntarily resigned. Thompson was given several opportunities to comply but failed to return the completed LOA form within the specified time periods. Thus, Temple did not err in concluding that Thompson had voluntarily resigned.

Where, as here, it has been determined that a voluntary termination has occurred, the claimant bears the burden of proving that necessitous and compelling reasons motivated the decision to leave the employment. *Accu–Weather, Inc. v. Unemployment Compensation Board of Review,* 160 Pa.Cmwlth. 307, 634 A.2d 818 (1993). Cause of a necessitous and compelling nature is that cause which results from overpowering circumstances which produce pressure, both real and substantial, to terminate one's employment which would compel a reasonable person to act in the same manner. *Quinn, Gent, Buseck and Leemhuis, Inc. v. Unemployment Compensation Board of Review,* 147 Pa.Cmwlth. 141, 606 A.2d 1300 (1992). Thompson merely argues that she could not have completed and returned the LOA form because to have done so would have been to "perpetrate a lie" since her physician had released her to return to work as of June 5, 1995. Yet, Thompson did in fact submit a completed LOA form on November 28, 1995, which incidently was more than one month past the last due date given by Temple. We fail to see how her physician's release, particularly in light of the restrictions imposed therein, prevented her in any way from complying with Temple's request to complete the LOA form in a timely manner. Thompson fails to identify any overpowering circumstances that produced pressure, both real and substantial, which forced her to voluntarily terminate her employment. Thus, Thompson did not carry her burden of proving that she had cause of a necessitous and compelling nature.

5. At all times herein relevant, Thompson maintained a post office box in Newtonville, N.J. as her address of record.

6. Whether voluntary termination was for cause of necessitous and compelling nature is a legal conclusion subject to appellate review which is limited to determining whether constitutional rights have been violated, an error of law has been committed or whether necessary findings of fact are supported by substantial evidence. *Eby v. Unemployment Compensation Board of Review,* 157 Pa.Cmwlth. 10, 629 A.2d 176 (1993); *Baertl v. Unemployment Compensation Board of Review,* 156 Pa.Cmwlth. 428, 627 A.2d 1232 (1993). We note that while Thompson is currently without the benefit of counsel, she was represented by Williams at the appeals before both the referee and the Board.

**4**

Accordingly, the order of the Board affirming the decision of the referee will be affirmed.

### ORDER

AND NOW, this 3rd day of December, 1996, the order of the Unemployment Compensation Board of Review, dated May 23, 1996, is affirmed.